IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

IVIE LEE HARRIS, JR.                                                                                          PLAINTIFF

      v.                                    Civil No. 1:13-CV-01023

SHERIFF DAVID NORWOOD;
JAMES BOLTON; DOUGLAS
WOOD; ANDREW TOLLESON;
ANTHONY GRUMMER; and
OFFICER LINDSEY                                                                                             DEFENDANTS

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed *pro se* by Plaintiff, Ivie Lee Harris Jr., pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.  Currently before the Court are Defendants' Motion for Summary Judgment and Supplemental Motion for Summary Judgment.  ECF Nos. 38, 65.  After careful consideration, I make the following Report and Recommendation.

### BACKGROUND

Plaintiff filed his Complaint on March 7, 2013.  ECF No. 1.  At the time he filed his Complaint, Plaintiff was incarcerated in the Ouachita County Detention Center ("OCDC").[1]  After reviewing his Complaint, the Court determined it would benefit from additional information and proffered a questionnaire to serve as an Addendum to Plaintiff's Complaint.  Plaintiff filed his Addendum on May 30, 2013.  ECF No. 9.  Plaintiff alleges Defendants Sheriff David Norwood, James Bolton, Doug Woods, Andrew Tolleson, Anthony Grummer, and Officer Lindsey of the

---

[1] Plaintiff is no longer incarcerated and now resides in Fordyce, Arkansas.

OCDC violated his constitutional rights. Plaintiff claims (1) he was denied medical care; (2) he was denied an adequate diet; (3) he was denied hygiene products; (4) he was denied proper tuberculosis screenings and precautions; (5) he was served pork even though he is a "pork free person;" (6) his legal mail was opened outside of his presence; and (7) a 309 inmate served as intake officer at the OCDC which invaded his privacy.[2] In addition, Plaintiff makes an official capacity claim for denial of medical care against Ouachita County based on its policy regarding medical care of inmates that are being housed at the OCDC but are technically inmates of Dallas County, Arkansas. ECF Nos. 1, 9.

Defendants filed their Motion for Summary Judgment (ECF No 38) on June 5, 2015. The Court held a hearing on September 16, 2015, at which time Plaintiff provided his sworn statement in response to the Motion. Plaintiff testified he was transferred from Dallas County to the OCDC where he remained from January 2, 2013 to March 21, 2013. At intake a 309 inmate took down all of Plaintiff's personal information and processed him into the OCDC. Among other things Plaintiff informed the 309 inmate he suffered from depression and was a pork free person due to his religious beliefs.

Plaintiff also testified he was taking medication for depression when he was transferred to the OCDC from Dallas County and, at the time of book-in, he had with him medication for pain and depression. Additionally, Plaintiff testified he had a follow-up appointment from a previous brain surgery scheduled when he was transferred into the OCDC but he was not taken to this follow-up appointment nor was the appointment rescheduled. Plaintiff testified he requested to be taken to this follow-up appointment or have the appointment rescheduled multiple times in writing and those requests were ignored. Plaintiff also testified he was in severe pain while he was

---

[2] Arkansas Act 309 is a state program that places inmates who meet certain criteria in local jails to be used as labor in order to reduce the number of inmates in state prisons.

incarcerated at the OCDC and was denied over the counter medication. Plaintiff testified he was prescribed pain medication when he was transferred back to Dallas County and he was taking pain and antidepressant medications while incarcerated in the Arkansas Department of Correction after being transferred from the OCDC.

Plaintiff stated the OCDC had no tuberculosis lights and he was exposed to inmates with tuberculosis. However, Plaintiff testified he has never had tuberculosis and has not been diagnosed with tuberculosis since leaving the OCDC. Plaintiff also testified his legal mail was opened three to four times outside of his presence. Plaintiff testified this stopped once he complained to the Court and the Clerk of the Court began tapping and numbering the Court's mailings to Plaintiff. Finally, Plaintiff testified he was not served pork-free meals despite his requests to receive pork-free meals due to his religious beliefs.

During the hearing, I asked Plaintiff to articulate how each Defendant was involved in Plaintiff's claims. In response, Plaintiff testified Defendant Norwood, as Sheriff of Ouachita County, was responsible to make things available to inmates. Plaintiff sent requests and grievances through the proper channels but not directly to Defendant Norwood regarding his missed follow-up doctor appointment. Defendant Norwood allowed the 309 inmate to work the intake desk and take all of Plaintiff's personal information. Defendant Norwood failed to stop the jailers from opening Plaintiff's legal mail. Further, Defendant Norwood did not ensure Plaintiff was fed a pork free diet even though Plaintiff stated at intake he was a Muslim and did not eat pork. Plaintiff never spoke directly with Defendant Norwood concerning any of his complaints.

Plaintiff testified he directly interacted with Defendant Wood. Plaintiff informed Defendant Wood he needed his pain and depression medication, his follow-up appointment, and a pork free diet. Defendant Wood disregarded all of Plaintiff's requests and served Plaintiff meals

with pork on the tray. Defendant Wood passed out medication to the inmates but did not provide Plaintiff with his depression or pain medication. Defendant Wood told Plaintiff his family would have to bring the medication to the OCDC for Plaintiff to receive it. Defendant Wood also passed out the mail. Plaintiff's mail from the Court was opened when he received it from Defendant Wood.

According to Plaintiff, Defendant Bolton is the first person who received inmate grievances and requests at the OCDC. Defendant Bolton refused to answer any of Plaintiff's grievances or requests regarding his medication, follow-up appointment, or pork free meals. However, Plaintiff never had any direct contact or communication with Defendant Bolton.

Plaintiff stated he told Defendants Grummer, Lindsey and Tollefson directly he was not receiving his pork free meals, psychiatric medications, or follow-up appointment after his brain surgery. Plaintiff also testified these Defendants ignored his verbal and written requests for assistance on multiple occasions.

On November 18, 2015, I entered a Report and Recommendation (ECF No. 50) recommending dismissal finding Plaintiff's claims were moot because he had requested only injunctive relief from the Defendants at the OCDC and he was no longer incarcerated at the facility. On December 21, 2015, the District Court adopted the Report and Recommendation *in toto.* ECF No. 51. On July 25, 2016, the Eighth Circuit Court of Appeals reversed this decision concluding Plaintiff's claims were not moot because his Complaint also sought damages. ECF No. 61-1.

In light of the Eighth Circuit's reversal, on October 6, 2016, I entered an Order directing Defendants to file a supplement to their Motion for Summary Judgment. ECF No. 62. Defendants filed their Supplemental Motion for Summary Judgment on December 20, 2016. ECF No. 65. Defendants adopted the original Motion for Summary Judgment (ECF No. 38) by reference and

argued: 1) Defendants were not deliberately indifferent to Plaintiff's medical needs; 2) Plaintiff was not served an inadequate diet or pork; 3) Plaintiff's legal mail was not opened outside of his presence; 4) Plaintiff was not housed in unconstitutional conditions of confinement; 5) Defendants are entitled to qualified immunity; and 6) there is no official capacity liability. ECF No. 65.

To assist Plaintiff in responding to the supplemental motion, I sent Plaintiff a questionnaire. ECF No. 68. Plaintiff filed his Response on January 4, 2017. ECF No. 69. In his Response Plaintiff admits it is the policy of the OCDC to provide all inmates a nutritionally and calorically adequate diet in accordance with all state and federal laws and regulations. However, he asserts he was served "pork on my meals constantly even though I informed them, the OCDC officers I am pork free". ECF No. 69. Plaintiff agrees he never contracted tuberculosis during his incarceration in the OCDC yet he states "they didn't have T.B. lights, nor was a test ever done on me…" ECF No. 69. In addition, Plaintiff states it "may or may not be the policy" of the OCDC to pass out soap and toilet tissue to the inmates once a week, "however I never received a constant supply of those items….and I had to buy all or most of my hygiene products". ECF No. 69. With respect to the 309 inmate, Plaintiff states he was booked into the OCDC by a 309 inmate who took down his personal information and entered it into the computer. ECF No. 69.

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine

issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

1. <u>Official Capacity Claims</u>

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege the defendants acted under color of state law and that they violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, Plaintiff's official capacity claims against Defendants are treated as claims against Ouachita County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Ouachita County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

*Id.* at 817-18.

To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

7

*Id.*, at 828 (citations omitted).

In his Addendum Plaintiff specifically indicates he is alleging an official capacity claim against Defendants. Specifically, Plaintiff alleges Ouachita County has "a Policy to only treat their personal prisoners any prisoner being held, must be approved to be treated by the previous facility, even though ouachita books you in,it's either your original county approves you or they'll let you die, or suffer that's unconstitutional also, they force you to buy tylenol off the commissary yet doesn't treat you for a headache, thus I suffered and was refused treatment of any kind because I was not there original prisoner but was at their facility". ECF No. 9, p. 5.

Plaintiff also claimed in his Addendum that Ouachita County has an unconstitutional custom: "It is if you ain't my prisoner, I'll hold you for another facility yet I won't treat you or get you treated instead I'll let you suffer, in regards to finance, money is more important than a prisoners health, thats why it has had 3 death in the 3 years its been open". ECF No. 9, p. 6.

Plaintiff has stated an official capacity claim against Defendants in his Addendum. There is a material question of fact as to whether this policy or custom actually exists and if so whether it is in itself is a violation of Plaintiff's constitutional rights. Plaintiff's official capacity claim relating to the medical care provided by Ouachita County to inmates who are technically prisoners of Dallas County will remain for resolution.

2.  Pork Free Diet

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *see also Cruz v. Beto*, 405 U.S. 319 (1972). However, this right is not without limitation. The Supreme Court has recognized "incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *O'Lone*, 482 U.S. at 348. Like with the

8

freedom to receive ideas, "the free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are reasonably related to legitimate penological interests.'" *Murphy v. Carroll*, 202 F. Supp. 2d 421, 424 (D. Md. 2002)*(quoting Turner*, 482 U.S. at 89; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-349 (1987); *Cruz*, 405 U.S. at 322)); *see also Thomas v. Gunter*, 32 F.3d 1258, 1259-60 (8th Cir. 1994). "A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so." *Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004). Specifically, it has been held inmates are entitled to a diet sufficient to sustain health and satisfy religious dictates. *See McElyea v. Babbitt,* 833 F.2d 196, 198 (9th Cir. 1987).

In order to present a valid First Amendment claim in this context, Plaintiff has the "burden of establishing that the alleged religious belief or ritual in question [a pork-free diet] is based on a teaching of the religion [Islam], that [Plaintiff's] belief in the teaching is sincerely held, and that the governmental action in question actually infringe[d] upon [his] free exercise of this belief." *Goff v. Graves,* 362 F.3d 543, 547 (8th Cir. 2004). Defendants have not contested that a pork-free diet is a tenet of Islam or that Plaintiff's proclaimed beliefs as a Muslim are not sincerely held. Consequently, the only question remaining is whether some action by Defendants actually infringed upon Plaintiff's free exercise of his belief.

Plaintiff claimed in his Complaint and Addendum he was a "pork free person" but denied pork free meal trays. He claims he informed the intake officer at the OCDC he did not eat pork and Plaintiff's Inmate Medical Form also indicates "**NO PORK**". ECF No. 40-2. Plaintiff alleges "I was served pork on my meals constantly even though I informed the, the OCDC officers I am pork free". ECF No. 69. Although Defendants state the OCDC does not serve the inmates

any pork products (ECF No. 67-1) they have not specified when this policy was put in place and if it was in place during Plaintiff's incarceration. Based on the record I find there are disputed facts with respect to Plaintiff's First Amendment claim for a pork free diet. Accordingly, this claim shall proceed.

3.  Legal Mail

Inmates have a First Amendment right of free speech to send and receive mail. *Hudson v. Palmer*, 468 U.S. 517, 547 (1984). However, "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977). Restrictions on this First Amendment right are valid "only if [they are] reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 89 (1987). In regards to opening of an inmates legal mail outside of the inmates presences, the Eighth Circuit Court of Appeals has held an "isolated incident, without any evidence of improper motive or resulting interference with the inmate's right to counsel or to access to the courts, does not give rise to a constitutional violation." *Gardner v. Howard,* 109 F.3d 427, 431 (8th Cir. 1997) (internal quotations and citations omitted).

Plaintiff stated during the summary judgment hearing his legal mail was opened three to four times outside of his presence. Plaintiff testified this stopped once he complained to the Court and the Clerk of the Court began tapping and numbering the Court's mailings to him. Plaintiff makes no allegations that Defendants purposefully opened his mail or opened it with improper motive. Further, Plaintiff failed to allege how the isolated incidents interfered with his right to counsel or access to the courts. Accordingly, Plaintiff has failed to state a cognizable claim under section 1983 with respect to the alleged opening of his legal mail.

4.     Conditions of Confinement

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted).  The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.  *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element.  *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities.  The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted).  Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.

Plaintiff claims he was housed with other inmates who had tuberculosis and the OCDC did not have tuberculosis lights.  There is nothing on the record to indicate any of the Defendants caused Plaintiff to be exposed to tuberculosis in a way that created an unreasonable risk of serious harm to his health.  In addition, Plaintiff testified he does not have tuberculosis and did not suffer any injury relating to his tuberculosis claims.  Compensatory damages cannot be awarded for the

violation of a constitutional right alone, instead, there must be an actual injury resulting from the violation to warrant compensatory damages. *See Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) ("[w]here no injury was present, no compensatory damages could be awarded.") (internal quotations omitted). Accordingly, there are no genuine issues of material fact relating to Plaintiff's tuberculosis claim and it fails as a matter of law.

Plaintiff also alleges he was denied an adequate diet. ECF No. 1, pp. 11-12; ECF No. 9, p. 9. Specifically, Plaintiff claims the meals provided did not meet a 2500 calorie diet and consist of one sandwich with a thin piece of meat, a small bag of chips, and two cookies. Further, Plaintiff alleges it is fourteen (14) hours between meals and the meals do not come with drinks. Inmates are entitled to a nutritionally adequate diet. *Divers v. Department of Corrections*, 921 F.2d 191, 194 (1990). However, the Eighth Amendment is only violated if an inmate is not provided with meals adequate to maintain his health. *See Keenan v. Hall,* 83 F.3d 1083, 1091 (9th Cir. 1996); *Burgin v. Nix,* 899 F.2d 733, 734-35 (8th Cir. 1990) (inmates do not have a right to be served a particular type of food); *Campbell v. Cauthron,* 623 F.2d 503, 508 (8th Cir. 1980). Other than his testimony that he did not receive a nutritionally adequate diet, Plaintiff has not presented any evidence as to how his health suffered from his diet or that he lost an unhealthy amount of weight while incarcerated in the OCDC.

With respect to his hygiene products – soap, toilet tissue, toothbrush and toothpaste) - Plaintiff simply alleges "I never received a constant supply of those items". ECF No. 69. Plaintiff also claims he was not provided fingernail clippers, hair clippers, or cleaning supplies. ECF No. 1, p. 13. Plaintiff has not submitted any specific facts to demonstrate his conditions of confinement relating to the lack of hygiene products in the OCDC between January 2, 2013 and March 21, 2013 violated his constitutional rights. Minimal deprivations do not violate the Constitution. *See Green*

*v. Baron,* 879 F.2d 305, 309 (8th cir. 1989). This is particularly true where the alleged deprivation was brief. *Whitnack v. Douglas County,* 16 F.3d 954, 958 (8th Cir. 1994).

Accordingly, I recommend Plaintiff's conditions of confinement claims relating to tuberculosis, inadequate diet and hygiene products be dismissed.

5.　　Invasion of Privacy 309 Inmate

Plaintiff claims a 309 inmate was allowed, by Defendant Sheriff Norwood, to take all of his personal information, including medical information, during the booking process and this violated his constitutional rights. The Court construes this claim as a plausible due process right to privacy claim.

In *Whalen v. Roe,* 429 U.S. 589, 599 (1977), the Court discussed a constitutionally protected "zone of privacy" involving two different kinds of interests. *Id.,* 429 U.S. at 598–599. The first "is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Id.* at 599. Following *Whalen,* the courts have recognized a constitutionally protected right of individuals to avoid disclosure of personal matters. This right has been variously characterized as the right to confidentiality or the right to privacy. *See e.g., Cooksey v. Boyer,* 289 F.3d 513, 515–516 (8th Cir.2002).

However, as pointed out by the Eighth Circuit in *Cooksey* "[n]ot every disclosure of personal information will implicate the constitutional right to privacy." *Id.,* 289 F.3d at 516. The Eighth Circuit noted it had "consistently held that to violate the constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation . . . to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." *Id.* (citations and internal quotation marks

omitted). Further, in the context of individuals detained in prisons or jail, it has been held that although "prisoners do not shed all constitutional rights at the prison gate,…lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner,* 515 U.S. 472, 485 (1995).

Here, Plaintiff has not alleged that his personal information was disclosed by the 309 inmate to any third parties or ever used for any purposes other than the OCDC legitimate purposes in housing him. Moreover, even if Plaintiff established a constitutional claim regarding the 309 inmate, compensatory damages cannot be awarded for the violation of a constitutional right alone. There must be an actual injury resulting from the violation to warrant compensatory damages. *See Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) ("[w]here no injury was present, no compensatory damages could be awarded.") (internal quotations omitted). Accordingly, Plaintiff's right to privacy claim regarding the 309 inmate fails as a matter of law.

6. <u>Denial of Medical Care</u>

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard. *See Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006). To prevail on his Eighth Amendment claim, Plaintiff must prove Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious

medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).  In order to show he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention."  *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct."  *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).  Deliberate indifference may also be manifested by "prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).  However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).

Plaintiff has three distinct claims: (1) his follow-up appointment was denied; (2) he was denied psychiatric medication; and (3) he was denied over the counter pain medication.  While Defendants are correct in their assertion that as non-medical professionals they were not in control of Plaintiff's medical treatment, they did control whether Plaintiff was given access to medical care.  Further, they were in control of whether Plaintiff was provided his previously prescribed medication and taken to a previously scheduled medical appointment following brain surgery.

Deliberate indifference can manifest by prison doctors in their response to the prisoner's needs "or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *See Estelle,* 429 U.S. at 104.

It is disputed whether Defendants refused to provide Plaintiff with transportation to an already scheduled follow-up appointment as well as whether Defendants refused Plaintiff psychiatric medication he was already prescribed. Further, there is no dispute Plaintiff underwent brain surgery one month prior to his incarceration at the OCDC and had a visible scar on his head from this surgery. Therefore, I find Plaintiff suffered from an objectively serious injury that layman jail employees could recognize. Further, I find that there are genuine issues of material fact as to whether Defendants were deliberately indifferent to Plaintiff's objectively serious medical needs by denying his follow-up appointment, prescribed medications and over the counter medications. Accordingly the claims for denial of adequate medical care shall proceed.

7.      <u>Individual Claims against Defendants Norwood and Bolton</u>

Liability under 42 U.S.C. § 1983 "requires a causal link to, and direct responsibility for, the deprivation of rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). Plaintiff testified he did not communicate or have any direct contact with Defendants Norwood and Bolton regarding his claims. There is nothing in the record to indicate they had any direct contact or interaction with Plaintiff and consequently Defendants Norwood and Bolton cannot be liable for the claims asserted by Plaintiff. Therefore, Plaintiff's claims against Defendants Norwood and Bolton in their individual capacities are dismissed.

## CONCLUSION

For the reasons stated, I recommend Defendants' Motion for Summary Judgment (ECF No. 38) and Supplemental Motion for Summary Judgment (ECF No. 65) be granted in part and denied in part. The Motions should be **GRANTED** with respect to Plaintiff's claims for a first amendment violation relating to mail, conditions of confinement, right to privacy, and individual claims against Defendants David Norwood and James Bolton. The Motions should be **DENIED** as to Plaintiff's individual and official capacity claims for denial of medical care and violation of his first amendment right to exercise religion.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 12th day of January 2017.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE